IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

GREENVILLE DIVISION

| | |
|---|---|
| Nacole Hause, ) <br> ) <br> Plaintiff, ) <br> ) <br> vs. ) <br> ) <br> AstraZeneca, ) <br> ) <br> Defendant. ) <br> ) | Civil Action No. 6:14-cv-4090-TMC-KFM <br><br> **REPORT OF MAGISTRATE JUDGE** |

This matter is before the court on the defendant's motion to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). The plaintiff, who is proceeding *pro se*, filed her complaint in state court on September 17, 2014, and on October 21, 2014, it was removed to this court based upon the diversity of the parties. The plaintiff alleges "assault, slander & libel," retaliation, and "hostile and manipulative work environment" against her former employer. Attached to the plaintiff's complaint are over a hundred pages of documents, including copies of numerous emails, journal entries, and the plaintiff's performance appraisal, performance corrective action plan, and notice of termination (*see* doc. 1-1).

The defendant filed the motion to dismiss on October 27, 2014, arguing that the plaintiff signed a release of her claims for which she received valid consideration. On October 28, 2014, pursuant to *Roseboro v. Garrison*, 528 F.2d 309, 310 (4th Cir. 1975), the plaintiff was advised of the motion to dismiss and motion for summary judgment procedures and the possible consequences if she failed to respond adequately. The plaintiff filed her response on October 29, 2014. The defendant filed a reply on November 10, 2014, and the plaintiff filed a sur-reply on November 20, 2014.

While the court may consider the release[1] at issue in this case and the documents attached to the plaintiff's complaint without converting the motion to dismiss to a motion for summary judgment, the parties have submitted other documents outside the pleadings (*see* docs. 14, 17, 18). Accordingly, "the motion must be treated as one for summary judgment under Rule 56," and "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d). The *Roseboro* order issued to the plaintiff on October 28, 2014, explained that if the parties present materials outside the pleadings, the motion to dismiss is converted to a motion for summary judgment pursuant to Federal Rule of Civil Procedure 56 (*see* doc. 12). The *Roseboro* order further explained how the plaintiff should respond to a motion for summary judgment. Specifically, Rule 56(c) provides that, in responding to a motion for summary judgment, a plaintiff must support his or her version of the disputed facts with material such as depositions, documents, affidavits, stipulations, or other materials. *See* Fed. R. Civ. P. 56(c).

On February 9, 2015, the undersigned issued a text order informing the parties that, pursuant to Rule 12(d), the motion to dismiss would be converted to a motion for summary judgment "solely on the issues of whether the plaintiff entered into a valid release of all claims alleged in her complaint and whether the release was revoked in writing by the plaintiff within seven days" (doc. 20). Both parties were given an opportunity to file any additional evidence they wished to be considered solely on these issues (*id.*).

---

[1] A court may consider "documents attached or incorporated into the complaint" without converting a motion to dismiss into a motion for summary judgment. *E.I, du Pont de Nemours and Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 448 (4th Cir. 2011). Further, "when a defendant attaches a document to its motion to dismiss, 'a court may consider it in determining whether to dismiss the complaint [if] it was integral to and explicitly relied on in the complaint and [if] the plaintiffs do not challenge its authenticity.'" *Am. Chiropractic Ass'n v. Trigon Healthcare, Inc.*, 367 F.3d 212, 234 (4th Cir. 2004) (quoting *Phillips v. LCI Int'l Inc.*, 190 F.3d 609, 618 (4th Cir.1999)). The release is integral to the complaint, is referenced by the plaintiff in the complaint and attachments thereto (*see* doc. 1, comp. ¶ 12; doc. 1-1 at 87-88), and the plaintiff does not dispute the authenticity of the document.

The defendant filed a response on February 20, 2015, and the plaintiff filed a response along with additional exhibits on March 17, 2015. Accordingly, the matter is now ripe for consideration as a motion for summary judgment.

## **FACTS PRESENTED**

The plaintiff was an employee of defendant AstraZeneca, LP. She was given a notice of termination on May 15, 2014, which stated that her last day of employment with the defendant would be May 31, 2014 (doc. 1-1 at 85). The notice of termination also informed the plaintiff that she had 21 days from the date of the notice to consider whether to sign a release (*id.*). The notice of termination also stated that the time period for consideration ended on June 5, 2014 (*id.*). The notice of termination was signed by Michael Cohran, the defendant's Senior Employment Practices Partner, Human Resources (*id.*).

In an email to Mr. Cohran, dated May 27, 2014, the plaintiff wrote to confirm the response deadline for the release was June 5, 2014, which Mr. Cohran did confirm that same day (*id.* at 88). In an email dated May 30, 2014, to Kymberly Hernandez, Senior Counsel for the defendant, the plaintiff requested that certain terms of the release be changed (*id.* at 87).

In an email to Mr. Cohran, dated June 4, 2014, the plaintiff stated that she had called "about my bill that is outstanding with Corporate American Express" and was told that no payment had been made (doc. 18-2). The plaintiff set out the amount due from the defendant and the amount that would be paid by her personally. The plaintiff further stated in the email, "I am signing the Mutual Consent Release. After reading the documentation it is my understanding that I still need to fill out the [COBRA] paperwork. Will someone send that to me so I will have the opportunity for my medical coverage?" (*id.*).

On June 4, 2014, the plaintiff signed the mutual consent release (doc. 11-1). The release acknowledged that the plaintiff had been provided 21 days within which to consider whether to sign the release and also acknowledged that the plaintiff could revoke execution of the release in writing within seven days immediately following signing the release (*id*. ¶ 8). The release further acknowledged that the plaintiff was provided the

3

following benefits in consideration for signing the release: a lump sum payment of $21,300.00, company subsidized health and dental coverage for six months, life insurance for six months, and access to an Employee Assistance Program for six months, all at no cost to the plaintiff (*id.* ¶ 2). The release also acknowledged that the defendant had advised the plaintiff to consult with an attorney before signing the release (*id.* ¶ 15).  The release provided that the plaintiff certified that she had carefully read the terms of the release and understood them (*id.* ¶ 6).

> The release stated, in relevant part:
>
> Employee, for and in consideration of the benefits provided by the Separation Plan and intending to be legally bound, does hereby irrevocably and unconditionally REMISE, RELEASE AND FOREVER DISCHARGE THE EMPLOYER AND ASTRAZENECA of and from any and all action and causes of actions, suits, debts, claims and demands whatsoever in law or in equity, which Employee ever had, now has, or hereafter may have . . . by reason of any matter, cause, or thing whatsoever that has occurred in the past up to the date of execution of this Agreement and, particularly, . . . any federal, state or local claims arising from or relating in any way to Employee's employment relationship or the termination of Employee's employment relationship with the Employer.

(*Id.* ¶ 3). The release further stated, "Employee expressly waives any rights, claims, suits, and causes of actions that Employee may have against the Employer and AstraZeneca concerning employment discrimination . . . " (*id.*).

In an email dated June 4, 2014, a paralegal for the law firm of Roe Cassidy Coates & Price emailed the plaintiff, stating that a letter of representation in the "Hause v. AstraZeneca" matter was attached (*see* doc. 18-1).  The plaintiff's reply dated June 5, 2014, the day after she signed the release, stated, "Yesterday around noon I had signed the severance agreement and sent it back since June 5th was the deadline.  I have an interview today at 11.  I was ready to move forward" (*id.*).

## APPLICABLE LAW AND ANALYSIS

Federal Rule of Civil Procedure 56 states, as to a party who has moved for summary judgment:  "The court shall grant summary judgment if the movant shows that

there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  As to the first of these determinations, a fact is deemed "material" if proof of its existence or nonexistence would affect the disposition of the case under the applicable law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).  An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257.  In determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.,* 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the district court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 325 (1986).  Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings; rather, he must demonstrate that specific, material facts exist that give rise to a genuine issue. *Id.* at 324.  Under this standard, the existence of a mere scintilla of evidence in support of the plaintiff's position is insufficient to withstand the summary judgment motion. *Anderson*, 477 U.S. at 252.  Likewise, conclusory allegations or denials, without more, are insufficient to preclude the granting of the summary judgment motion.  *Id.* at 248. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.  Factual disputes that are irrelevant or unnecessary will not be counted." *Id.*

The defendant argues that the release signed by the plaintiff is a valid and binding contract that should be enforced by this court.  Attached as an exhibit to the defendant's motion is a copy of the release signed by the plaintiff on June 4, 2014. In response to the defendant's motion, the plaintiff mostly discusses the defendant's alleged mistreatment of her during her employment (*see* doc. 14 ¶¶ 1-3, 5-6).   However, the plaintiff does not dispute that she signed the release on June 4, 2014, or that she received valid consideration for the release consisting of a lump sum payment of $21,300.00, health

insurance at no cost for six months, and other benefits. Further, the plaintiff's pay stub for June 2014 shows that the severance pay in the amount of $21,300.00 was in fact deposited in her account (doc. 17-1).

As noted above, in an email to Ms. Hernandez on May 30, 2014, the plaintiff asked about the provision in the release that stated, "Employee acknowledges and agrees that the employment relationship Employee had with the company has been permanently and irrevocably severed; and that Employee will not apply for or otherwise seek employment or re-employment as an employee, or engagement as a consultant or independent contractor, with the Company or AstraZeneca" (doc. 1-1 at 87; see doc. 11-1 ¶ 14). The plaintiff asked that the terms of the release be changed based on her "situation," because, under this provision, if her "name was cleared and it was a wrongful termination, how could [she] work for AstraZeneca again and be brought back?" (doc. 1-1 at 87). The plaintiff argues that because she did not receive a response from Ms. Hernandez and she "had 7 days in writing to disagree with signing that Mutual Consent Form, per that e-mail on May 30th the Plaintiff never fully agreed to the Mutual Consent Form nor was the Plaintiff provided with specific direction" (doc. 14 ¶ 3). However, as the defendant argues, the plaintiff's argument is flawed because she signed the release on June 4, 2014, after the email was sent. It is not possible for the plaintiff to have revoked an agreement before she ever signed it. While the plaintiff certainly had seven days after signing the release to revoke the agreement, an email sent before she consented to the agreement does not invalidate the contract.

In her sur-reply (doc. 18), the plaintiff states that after she signed the release her attorney sent an email to Ms. Hernandez stating that the plaintiff was not in agreement with the terms of the release. In support of this argument, the plaintiff attached an email that is dated the day the plaintiff signed the release (see doc. 18-1). The email is from paralegal Ellen Griffith in the law firm of Roe Cassidy Coates & Price to the plaintiff, stating that a letter of representation in the "Hause v. AstraZeneca" matter was attached. The plaintiff's reply is dated the day after she signed the release and stated, "Yesterday around

6

noon I had signed the severance agreement and sent it back since June 5th was the deadline. I have an interview today at 11. I was ready to move forward" (*id.*). Clearly the attachment does not support the plaintiff's conclusory allegation that she revoked the release but rather supports the fact that she signed the release and returned it to the defendant.

As noted above, the plaintiff was given an opportunity to submit any additional evidence she wished for the court to consider on the issues of whether she entered into a valid release of all the claims alleged in her complaint and whether she revoked the release in writing within seven days. In response, the plaintiff acknowledges that she signed the release on June 4th and sent the document via Federal Express for overnight delivery to Mr. Cohran, since June 5th was the deadline. The plaintiff attached telephone records and an affidavit in which she states the following:

> I . . . reached out to Ellen Griffith [paralegal at Roe Cassidy Coates & Price] on behalf of the attorney she worked for, Joseph "Josh" Smith[,] via telephone on June 5, 2014, at 1:18 p.m. Ellen Griffith stated that Joseph Smith reached out to Kymberly Herna[n]dez, Sr. Counsel for [the defendant] after [I] signed the release back on June 4, 2014, at approximately 12 p.m. Joseph Smith stated to Kymberly Hernandez that his client did not agree to the terms in the release.

(Doc. 26-1 at 2). An affidavit submitted to support a party's factual position in support or in opposition to a motion for summary judgment "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4). The plaintiff's affidavit contains hearsay that would not be admissible in evidence as she is offering out of court statements made by others to prove the matter asserted therein. *See* Fed. R. Evid. 801(c). Furthermore, even assuming that Mr. Smith did call Ms. Hernandez, the plaintiff has still failed to offer any proof that she revoked the release *in writing* within seven days of signing it. The release clearly requires such by its terms for a valid revocation (doc. 11-1 ¶ 8) (stating "Employee may revoke execution of the Release by delivery to the Employer

of a writing to that effect within the seven days immediately following Employee's signing of the Release.").

In its response following the conversion of the motion to dismiss to one for summary judgment, the defendant states as follows:

> Although it is Plaintiff's burden to show a valid revocation of the release, Defendant has itself searched for any document indicating an intention of Plaintiff, or someone on her behalf, to revoke the executed release. Plaintiff alleges her lawyer sent an email to Defendant indicating Plaintiff's intention to revoke the release. Defendant conducted a search of emails, letters, and other documents for a written revocation from Plaintiff or her lawyer. Nothing came of this search.

(Doc. 25 at 2).

In determining whether the release is valid, the court must look to the totality of the circumstances surrounding its execution and consider a number of factors, including but not limited to: (1) the clarity and specificity of the release language; (2) the plaintiff's education and business experience; (3) the amount of time the plaintiff had for deliberation about the release before signing the release; (4) whether the plaintiff knew or should have known her rights upon execution of the release; (5) whether the plaintiff was encouraged to seek, or in fact received, benefit of counsel; (6) whether there was opportunity for negotiation of the terms of the release; and (7) whether the consideration given in exchange for the waiver and accepted by the plaintiff exceeds the benefits to which the plaintiff was already entitled by law or contract. *Torrez v. Pub. Serv. Co. Of New Mexico,* 908 F.2d 687, 689–690 (1 st Cir.1990); *see also Scoggins v. Honeywell Intern., Inc*., C.A. No. 2:11-3028-PMD-BM, 2012 WL 6102067, at *2-6 (D.S.C. Nov. 8, 2012) (applying test and finding that the plaintiff waived the claims asserted in her complaint), *adopted by* 2012 WL 6102031 (D.S.C. Dec. 10, 2012). The totality of circumstances test does not require that every element be met; rather, it only requires that after considering the totality of the circumstances, the plaintiff's waiver can be characterized as knowing and voluntary. *Melanson v. Browning–Ferris Indus., Inc*., 281 F.3d 272, 276 (1st Cir. 2002). The question,

then, on summary judgment is whether the evidence is sufficient to give rise to a genuine issue of fact as to whether, considering the totality of the circumstances, the plaintiff's waiver was knowing and voluntary.

The evidence before this court does not demonstrate a genuine factual issue concerning whether the release was knowing and voluntary. First, the release is only three pages long and specifically stated that the plaintiff released any claims arising from her employment relationship or the termination of her employment relationship with the defendant and expressly waived any claims she may have concerning employment discrimination under state and federal law (doc. 11-1 ¶ 3). Second, while there is no evidence of the plaintiff's level of education, she clearly has business experience as a pharmaceutical representative as shown by the emails and other evidence attached to the complaint (*see* doc. 1-2), and the language of the release is well within a lay person's comprehension (*see* doc. 11-1). Third, the evidence shows that the plaintiff had 21 days to consider the release (until June 5th), and she signed the release on June 4th. Fourth, the release stated that the plaintiff certified that she had carefully read the terms of the release and understood them (doc. 11-1 ¶ 6). Fifth, the release also acknowledged that the defendant had advised the plaintiff to consult with an attorney before signing the release (*id.* ¶ 15), and it appears from the evidence presented by the plaintiff that she did, in fact, consult with an attorney. Sixth, the evidence further shows that the plaintiff at least attempted to negotiate some of the terms of the release, although she stated she did not get a response from Ms. Hernandez. Lastly, in exchange for the release, the plaintiff received valuable consideration in the amount of $21,300.00, six months of health insurance coverage, and other valuable benefits.

The totality of circumstances in this case fails to demonstrate a genuine issue of fact that the plaintiff's waiver was not knowing, voluntary, and complete. Furthermore, there is no evidence to show that the plaintiff revoked the release in writing within seven days of signing the release. The evidence is undisputed that the plaintiff has retained the monetary benefits that she was only entitled to in exchange for executing the release. As

all of the claims raised in the plaintiff's complaint fall within the terms of the release (*see* doc. 1-1; doc. 11-1 ¶ 3), the complaint should be dismissed. *See Randolph v. Caruso Homes, Inc.*, C.A. No. RWT-13-2069, 2014 WL 4661985, at *5 (D. Md. Sept. 16, 2014) ("By signing the Release, failing to revoke it, and accepting payment under it, [the plaintiff] chose to forego the uncertainty and expense of a lawsuit in favor of the certainty of a severance payment. The Court will not allow [the plaintiff], having knowingly and voluntarily waived her rights in exchange for a payment she has long since accepted, attempt to assert those rights now.").

## CONCLUSION AND RECOMMENDATION

Wherefore, based upon the foregoing, the defendant's motion for summary judgment (doc. 11) should be granted.

IT IS SO RECOMMENDED.

s/Kevin F. McDonald
United States Magistrate Judge

March 20, 2015
Greenville, South Carolina